1

2

3

4

5

6 UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

7

| | |
|---|---|
| THOMAS L. TRESSLER,<br><br>                 Plaintiff,<br><br>    v.<br><br>BNSF RAILWAY COMPANY, a<br>Delaware corporation,<br><br>                 Defendant. | NO:  CV-10-188-RMP<br><br>ORDER DENYING DEFENDANT'S<br>MOTIONS TO EXCLUDE AND<br>MOTION FOR SUMMARY<br>JUDGMENT |

8

9

10

11

12

13

14        This matter comes before the Court on motions by Defendant Burlington

15  Northern Santa Fe Railroad ("BNSF"): (1) to exclude under *Daubert*[1] the

16  testimony of industrial hygienist Michelle Copeland for lack of reliable

17  methodology, **ECF No. 32**; (2) to exclude under *Daubert* the testimony of Paula

18  Lantsberger, M.D. for unreliable methodology, **ECF No. 36**; and (3) for summary

19  judgment dismissal of Plaintiff's case for inability to show causation or breach of

20

21  _____

[1] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1999).

ORDER DENYING DEFENDANT'S MOTIONS TO EXCLUDE AND MOTION
FOR SUMMARY JUDGMENT ~ 1

duty of care as a matter of law, **ECF No. 40**.  The Court has reviewed the parties'
submitted materials, heard oral argument on January 24, 2012, in Spokane,
Washington, and is fully informed.

## BACKGROUND

Plaintiff, Thomas Tressler, brings a claim against BNSF for damages under
the Federal Employers Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.,* based on
the theory of cumulative traumatic injuries to his lower back over the course of his
career as a clerk, fireman, and engineer at BNSF, particularly during the 1980s and
1990s.

Mr. Tressler began working for BNSF as a clerk, which involved transferring
freight between boxcars at warehouses, driving crews to the appropriate train, and
other tasks.  ECF No. 44-1 at 6.  In 1980, Mr. Tressler shifted to working in train
service, where he worked for the rest of his career with BNSF.  ECF No. 44-1 at 7;
ECF No. 35-1 at 14.  For his first three years in train service, Mr. Tressler worked
as a fireman and then, until 1990, he switched back and forth between working as a
fireman and as a locomotive engineer.  ECF No. 42 at 2.  From 1990 until his
retirement, Mr. Tressler worked exclusively as an engineer, assigned mostly to
local jobs in and around Yakima, Washington.  ECF No. 44-1 at 7-8.  As an
engineer, Mr. Tressler inspected train cars before the train departed, managed crew
members, and operated the train from the locomotive.

ORDER DENYING DEFENDANT'S MOTIONS TO EXCLUDE AND MOTION
FOR SUMMARY JUDGMENT ~ 2

In approximately 2008, Mr. Tressler began experiencing pain associated with what was later diagnosed as degenerative disc disease or multi-level lumbar disc disease.[2]  The primary symptom is severe pain in his lower back that radiates into his right leg.  Mr. Tressler has experienced other medical problems, as well, over the last several years, including insulin resistance, mixed connective tissue and joint disease, a shoulder injury, sleep apnea and chronic sleep disorder, and repeated bronchitis and pneumonia.  ECF No. 49 at 20.  Mr. Tressler currently does not smoke, but he smoked for some period of time until he quit smoking 30 years ago.  ECF No. 49 at 22.  Mr. Tressler retired on the basis of disability in August 2009.  ECF No. 49 at 24.

Mr. Tressler alleges that his degenerative disc disease was caused by BNSF's failure to use reasonable care in training him to avoid hazardous working conditions and to physically modify the conditions in which he worked to allow him to avoid known hazards.  Specifically, Mr. Tressler alleges the following defects in his working environment: mechanical failures in the locomotives, hand brakes that were difficult to operate, and locomotive seats that were uncomfortable or difficult to adjust.

---

[2] It is unclear to the Court based on the documents submitted by the parties whether these are different diagnoses or two names for the same condition.

ORDER DENYING DEFENDANT'S MOTIONS TO EXCLUDE AND MOTION FOR SUMMARY JUDGMENT ~ 3

1    BNSF counters that Mr. Tressler cannot prove that BNSF was negligent in

2    any duty it owed Mr. Tressler or that Mr. Tressler's injuries were caused by his

3    work for BNSF.

### ANALYSIS

**I.    BNSF's Motions to Exclude Mr. Tressler's Expert Witnesses**

A.    _Daubert_ Standard

Defendant challenges the admissibility of two of Plaintiff's expert witnesses. District courts act as gatekeepers with respect to expert testimony and are responsible for ensuring that "any and all scientific testimony or evidence admitted is not only relevant but reliable.  *Daubert v. Merrell Dow Pharms.*, *Inc.*, 509 U.S. 579, 589 (1999) ("*Daubert* I").  An expert may testify only if "(1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.

"[S]everal factors . . . may bear on a judge's determination of the reliability of an expert's testimony."  *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (9th Cir. 2001).  A non-exhaustive list of factors that a court may consider includes:

> (1) whether a theory or technique can be or has been tested; (2) whether it has been subjected to peer review and publication; (3) whether a technique has a high known or potential rate of error and whether there are standards controlling its operation; and (4) whether

ORDER DENYING DEFENDANT'S MOTIONS TO EXCLUDE AND MOTION FOR SUMMARY JUDGMENT ~ 4

the theory or technique enjoys general acceptance within a relevant scientific community.

*Cooper*, 259 F.3d at 199 (citing *Daubert* I, 509 U.S. at 592-94).

The Ninth Circuit also has indicated that independent research, rather than research conducted for litigation purposes, carries with it the indicia of reliability. *See Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1317 (9th Cir.1995) ( "*Daubert* II" ). In particular, relying on independent, pre-existing research "provides objective proof that the research comports with the dictates of good science" and is less likely "to have been biased by the promise of remuneration." *Daubert* II, 43 F.3d at 1317.  If the testimony is not based on independent research, the expert must explain precisely how she went about reaching her conclusions and point to some objective source—a learned treatise, the policy statement of a professional association, a published article in a reputable scientific journal or the like—to show that she has followed the scientific method, as it is practiced by at least a recognized minority of scientists in his field. *Daubert* II, 43 F.3d at 1318–19 (citing *United States v. Rincon*, 28 F.3d 921, 924 (9th Cir.1994)); *see also Lust v. Merrell Dow Pharmaceuticals, Inc.*, 89 F.3d 594, 597 (9th Cir.1996)).

The proponent of the expert bears the burden of proving by a preponderance of the evidence that the expert's testimony is admissible.  *Lust v. Merrell Dow Pharm., Inc.,* 89 F.3d 594, 598 (9th Cir. 1996).

ORDER DENYING DEFENDANT'S MOTIONS TO EXCLUDE AND MOTION FOR SUMMARY JUDGMENT ~ 5

1        B.    FELA Negligence Standard

2        In a FELA case, the plaintiff bears the burden of proving the standard

3 elements of negligence—the existence of a duty owed by the defendant, a breach

4 of that duty, causation, and damage.  *Consolidated Rail Corp. v. Gottshall*, 512

5 U.S. 532, 538 (1994).

6        To prove the causation of a negligence claim, a plaintiff must show both

7 general and specific causation.  *See Jaros v. E.I. DuPont (In re Hanford Nuclear*

8 *Reservation Litig.)*, 292 F.3d 1124, 1133 (9th Cir.2002))*;* Margaret A. Berger, *The*

9 *Admissibility of Expert Testimony*, Reference Manual on Scientific Evidence 24

10 (3d ed. 2011).  However, a diminished causation standard—the "played a part—no

11 matter how small . . . in bringing about the injury" standard—applies in cases

12 brought by employees against railroads under FELA.  *CSX Transportation v.*

13 *McBride*, 131 S.Ct. 2630, 2637(2011).  It is the norm for a FELA plaintiff to

14 provide expert testimony to establish specific causation for a cumulative trauma

15 disorder.  *Myers v. Illinois Central R.R. Co.*, 629 F.3d 639, 642 (7th Cir. 2010).

16        "[R]easonable foreseeability of harm is an essential ingredient of [FELA]

17 negligence."  *Gallick v. Baltimore & O.R. Co.*, 372 U.S. 108, 117 (1963).  A

18 railroad's duty of care toward an employee is "'measured by what is reasonably

19 foreseeable under like circumstances.'" *CSX Transportation*, 131 S.Ct. at 2643

20 (quoting *Gallick*, 372 U.S. at 118).

21

ORDER DENYING DEFENDANT'S MOTIONS TO EXCLUDE AND MOTION
FOR SUMMARY JUDGMENT ~ 6

C.   <u>BNSF's Motion to Exclude Testimony of Ms. Copeland</u>

Ms. Copeland is a potential expert witness on the issue of what duty of care BNSF may have owed Mr. Tressler with respect to the cumulative trauma injury that he asserts and whether BNSF breached that duty.  At oral argument, Plaintiff averred that Plaintiff would use Ms. Copeland's expert testimony to support only the elements of duty and breach.  However, at deposition, Defendant's questions of Ms. Copeland, and Ms. Copeland's responses to those questions, cast doubt as to whether Ms. Copeland intends to testify as to general causation, but not specific causation, or whether she will not address the subject of causation at all.  Despite that lack of clarity as to Plaintiff's and Ms. Copeland's intentions for trial, Ms. Copeland's report and deposition testimony touch significantly on the issue of general causation.  ECF No. 35-2 at 36-37.  The Court, therefore, addresses the admissibility of Ms. Copeland's expert opinions on the elements of duty, breach, and general causation.

Ms. Copeland earned a Bachelor of Science degree from the University of Washington in 1977, became certified as an industrial hygienist in 1986, and has worked in the field of occupational safety and health for approximately 32 years. ECF Nos. 35-1 at 5; 55 at 2.  During her career, Ms. Copeland has worked in various industries, including "general industry, construction, maritime, and mining," to "assist[] employers to understand and implement safety and health regulations and to solve safety and health-related problems."  ECF No. 35-1 at 6.

ORDER DENYING DEFENDANT'S MOTIONS TO EXCLUDE AND MOTION FOR SUMMARY JUDGMENT ~ 7

1    Ms. Copeland also has provided "workplace body mechanics training" focusing on

2    "safe pushing, pulling, and lifting during the performance of heavy and/or

3    repetitive tasks."  ECF No. 35-1 at 6.

4          In preparing her expert report for this case, Ms. Copeland reviewed

5    numerous documents provided by BNSF in the course of discovery, including

6    BNSF training materials, operations manuals, minutes from BNSF "safety

7    meetings" between 2003 and 2010, and BNSF ergonomics handbooks.  Ms.

8    Copeland also reviewed professional publications on whole-body vibration

9    exposure, work-related musculoskeletal disorders of the lower back, and the effects

10    of long-term heavy physical work, awkward postures, and lifting and forceful

11    movements by the National Institute for Occupational Safety and Health

12    ("NIOSH") and Occupational Safety and Health Administration ("OSHA") and in

13    peer-reviewed journals such as the *Journal of Occupational and Environmental*

14    *Hygiene* ("AIHA") and Applied Ergonomics.  ECF No. 35-1 at 8-9.  Some of the

15    publications that Ms. Copeland reviewed appear to be specific to the railroad

16    industry, and some, according to the titles of the articles or the journals, appear to

17    address whole-body vibration exposure and other topics across multiple industries.

18    ECF No. 35-1 at 9.  In addition, Ms. Copeland interviewed Mr. Tressler about his

19    work history with BNSF, his work duties, and the training he received from BNSF

20    throughout his employment.  ECF No. 35-1 at 10-16.

21

ORDER DENYING DEFENDANT'S MOTIONS TO EXCLUDE AND MOTION
FOR SUMMARY JUDGMENT ~ 8

Ms. Copeland reviewed studies that found that certain motions, positions, and/or exposures to whole-body vibration constitute "ergonomic hazards with the potential to cause work-related musculoskeletal disorders of the low back and resulting low back pain."  ECF No. 35-1 at 16.  Ms. Copeland then compared the tasks and workplace conditions that Mr. Tressler reported to her with the at-risk activities discussed in the studies and concluded that "Mr. Tressler performed a number of tasks that would be consistent with the . . . at-risk activities for low back pain."  ECF No. 35-1 at 17.

BNSF takes issue with Ms. Copeland's lack of railroad-specific experience and the fact that she did not conduct on-site measurements of what levels of vibration and other hazards Mr. Tressler would have been exposed to in the BNSF rail yards and on the BNSF tracks where Mr. Tressler worked.  However, these objections, to the extent that they undermine Ms. Copeland's opinions at all, go to the weight that a jury should accord Ms. Copeland's testimony, not its admissibility.  As stated in *Daubert* "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence" *Daubert* I, 509 U.S. at 596.  Moreover, BNSF's expectations that Ms. Copeland or other experts conduct onsite measurements are: (1) not supported by caselaw, *see Daubert* II, 43 F.3d at 1318–19 (expert testimony may still be reliable when not based on independent research if the witness explains precisely how she went about reaching

ORDER DENYING DEFENDANT'S MOTIONS TO EXCLUDE AND MOTION FOR SUMMARY JUDGMENT ~ 9

her conclusions and points to some objective source); and (2) impracticable in circumstances such as these where Plaintiff is claiming an injury that developed over the course of three decades with historical data that would be unavailable for Ms. Copeland to collect or measure.

Ms. Copeland further opines that BNSF was, "like many other companies, very much aware of ergonomics as an issue of concern, as well as of the potentials for [musculoskeletal or cumulative trauma disorders] in their workplace" and that "[t]his information was readily available to them as early as the 1970s and clearly recognized as a concern by their internal medical department at least by the early 1990s." ECF No. 35-1 at 19. Ms. Copeland supports this conclusion by a literature review and construction of a timeline based on that review and based on her own knowledge and experience. The methodology Ms. Copeland employs on this issue is sufficiently reliable for admission under Fed. R. Evid. 702, and the inquiry fits the issues in this case by focusing on the question of what BNSF may have known when, and what action or inaction would have been reasonable in light of those circumstances. *See CSX Transportation*, 131 S.Ct. at 2643 (for purposes of a FELA negligence claim, the key question on the duty of care element is what would have been reasonably foreseeable to a carrier in similar circumstances).

1    D.    BNSF's Motion to Exclude Testimony of Dr. Lantsberger

2    Plaintiff intends to offer the expert testimony of Dr. Paula Lantsberger on

3    the issue of causation.  Dr. Lantsberger is board-certified as an occupational

4    medicine physician and has practiced in the field of occupational medicine in

5    Spokane since 1988.  Dr. Lantsberger earned her medical degree from the

6    University of South Dakota School of Medicine in 1985 and a Masters in Public

7    Health degree from the Medical College of Wisconsin in 1999.  ECF No. 49 at 13.

8    She bases her opinion in this case on her examination of Mr. Tressler, her analysis

9    of his medical records, and her education, training, and experience.  ECF No. 49 at

10    19.

11    Dr. Lantsberger engages in differential diagnosis to reach her specific

12    causation opinion that Mr. Tressler's "lumbar disc disease and right lower

13    extremity radiculopathy are related to his work as an engineer for [BNSF]" and

14    that "[t]he lumbar disc disease was aggravated by the specific duties as a clerk and

15    as an engineer."  ECF No. 49 at 63.

16    Courts have repeatedly recognized differential diagnosis, when properly

17    conducted, as a reliable methodology upon which to base an expert medical

18    opinion.  *See Clausen v. M/V New Carissa*, 339 F.3d 1049, 1058-59 (9th Cir.

19    2003); *Mattis v. Carlon Elec. Prods.*, 295 F.3d 856, 861 (8th Cir. 2002); *Hollander

20    v. Sandoz Pharms. Corp.*, 289 F.3d 1193, 1210-11 (10th Cir. 2002); *Westberry v.

21    Gislaved Gummi AB*, 178 F.3d 237, 262 (4th Cir. 1999).  Differential diagnosis,

ORDER DENYING DEFENDANT'S MOTIONS TO EXCLUDE AND MOTION
FOR SUMMARY JUDGMENT ~ 11

"[i]n the legal context, . . . refers to the technique 'in which [a] physician first rules in all scientifically plausible causes of a plaintiff's injury, then rules out least plausible causes of injury until the most likely cause remains, thereby reaching [a] conclusion  as to whether defendant[] . . .caused injury . . . ." Federal Judicial Center, *Reference Guide on Medical Testimony*, REFERENCE MANUAL ON SCIENTIFIC EVIDENCE 690 (3d ed. 2011) (quoting *Wilson v. Taser Int'l, Inc.*, 2008 WL 5215991, at *5 (11th Cir. Dec. 16, 2008)); *see also Clausen*, 339 F.3d at 1057 (differential diagnosis consists of "identifying the cause of a medical problem by eliminating the likely causes until the most probable one is isolated")).[3]  Therefore, a differential diagnosis is unreliable if it rules in a potential cause that is *not* capable of causing the disease or condition from which Plaintiff suffers.  *Clausen*, 339 F.3d at 1057.

Dr. Lantsberger ruled in two of Mr. Tressler's longstanding health conditions, mixed connective tissue disease and "a long-standing kyphosis and a wedge deformity of the thoracic spine" (a curving of the spine), along with Mr.Tressler's work for BNSF, as possible causes of Mr. Tressler's lumbar disc

---

[3] By contrast, differential diagnosis in the medical context "refers to a set of diseases that physicians consider as possible causes for symptoms the patient is suffering or signs that the patient exhibits."  REFERENCE MANUAL ON SCIENTIFIC EVIDENCE at 691.

ORDER DENYING DEFENDANT'S MOTIONS TO EXCLUDE AND MOTION FOR SUMMARY JUDGMENT ~ 12

1    disease and the lower back pain associated with it.  ECF No. 49 at 63-64.  Dr.

2    Lantsberger then ruled out kyphosis on the basis that there was "demonstrated

3    stability on repeated MRI scans and x-rays over the records included in the medical

4    record review" and Mr. Tressler "did not demonstrate involvement of his lower

5    back until approximately 2008."  ECF No. 49 at 63.  Dr. Lantsberger ruled out the

6    mixed connective tissue disease on the basis that "[t]he symptoms associated with

7    [Plaintiff's] lower back condition were clearly separate and different from the

8    symptoms that he had associated with his mixed connective tissue disease" and

9    "[h]is mixed connective tissue disease was under adequate control with the use of

10   Plaquenil at the time of his diagnosis of the lumbar condition."  ECF No. 49 at 63.

11          The preponderance of the evidence supports that Dr. Lantsberger's specific

12   causation opinion is the product of reliable principles and methods.

13          As for general causation, Dr. Lantsberger reaches her conclusions by

14   employing the technique of medical and scientific literature review and evaluation

15   of available epidemiological data.  The Court finds this to be a reliable

16   methodology in that it tests the particular hypothesis in this case by referring to

17   peer-reviewed materials to determine whether, in general, conditions similar to

18   what Plaintiff describes can cause the symptoms of which Plaintiff complains.

19          Therefore, the Court finds Dr. Lantsberger's opinions to be admissible for

20   purposes of Fed. R. Evid. 702.

21

ORDER DENYING DEFENDANT'S MOTIONS TO EXCLUDE AND MOTION
FOR SUMMARY JUDGMENT ~ 13

**II.    BNSF's Motion for Summary Judgment**

    A.    <u>Summary Judgment Standard</u>

    Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there are genuine issues of material fact, the court must view the evidence in the light most favorable to the nonmoving party. *Johnson v. Lucent Techs., Inc.*, 653 F.3d 1000, 1005 (9th Cir. 2011).

    Summary judgment is inappropriate where sufficient evidence supports the claimed factual dispute or where different ultimate inferences may reasonably be drawn from the undisputed facts. *Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975, 988 (9th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The moving party must demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. See Celotex Corp., 477 U.S. at 325. The burden then shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence supporting summary judgment must be admissible. Fed. R. Civ. P. 56(e). Furthermore, the court will not presume

ORDER DENYING DEFENDANT'S MOTIONS TO EXCLUDE AND MOTION FOR SUMMARY JUDGMENT ~ 14

1  missing facts, and non-specific facts in affidavits are not sufficient to support or

2  undermine a claim. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

3      B.    <u>Application</u>

4      Defendant's motion for summary judgment is premised on the exclusion of

5  Plaintiff's purported expert testimony under the Defendant's accompanying

6  *Daubert* motions. *See* ECF No. 43 at 10-16. However, in light of the Court's

7  findings that Plaintiff's experts Ms. Copeland and Dr. Lantsberger should not be

8  excluded under Fed. R. Evid. 702 and *Daubert*, Plaintiff has submitted sufficient

9  evidence to support the conclusion that there are triable issues as to duty, breach,

10  causation, and damages in this case. Therefore, summary judgment in Defendant's

11  favor is not appropriate at this stage. *See Miller*, 454 F.3d at 988.

12  ///

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

ORDER DENYING DEFENDANT'S MOTIONS TO EXCLUDE AND MOTION
FOR SUMMARY JUDGMENT ~ 15

Accordingly, **IT IS ORDERED** that:

1.    Defendant's Motion to Exclude Trial Testimony of Plaintiff's Expert, Michelle Copeland, **ECF No. 32**, is **DENIED**.

2.    Defendant's Motion to Exclude Trial Testimony of Plaintiff's Expert, Paula Lantsberger, M.D., **ECF No. 36**, is **DENIED**.

3.    Defendant's Motion for Summary Judgment, **ECF No. 40**, is **DENIED**.

**IT IS SO ORDERED**.

The District Court Clerk is directed to enter this Order and furnish copies to counsel.

**DATED** this 1st of February 2012.


              *s/ Rosanna Malouf Peterson*
              ROSANNA MALOUF PETERSON
              Chief United States District Court Judge